NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MHA, LLC, D/B/A "MEADOWLANDS HOSPITAL MEDICAL CENTER"<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, INCORPORATED; UNITEDHEALTHCARE, INC.; UNITEDHEALTHCARE SERVICES, INC.; AMERICHOICE OF NEW JERSEY, INC. d/b/a UNITED HEALTHCARE COMMUNITY PLAN IN NEW JERSEY; OXFORD HEALTH PLANS, INC.; OXFORD HEALTH PLANS, LLC; OXFORD HEALTH PLANS(NJ) INC.; A/K/A OXFORD HEALTH PLANS OF NEW JERSEY, INC.; HEALTH NET OF THE NORTHEAST, INC.; HEALTH NET OF NEW JERSEY, INC., and ABD Companies 1-100, and JOHN DOES 1-100,<br><br>Defendants. | Civil Action No. 13-6130 (WJM)<br><br><br><br><br><br><br><br>REPORT AND RECOMMENDATION |

**FALK, U.S.M.J.**

Before the Court is Plaintiff's motion to remand this case to state court. [CM/ECF No. 5.] Defendants oppose the motion. No argument was heard. Fed. R. Civ. P. 78(b).

For the reasons that follow, it is respectfully recommended that the motion be **GRANTED**.

## BACKGROUND[1]

Plaintiff, MHA, is the current owner of Meadowlands Hospital Medical Center. It contends that from December 7, 2010, through November 1, 2011, MHA, through Meadowlands Hospital, provided services to many thousands of members of the various Defendants' health benefit plans as an out-of-network provider. Effective November 1, 2011, MHA entered into two Facility Participation Agreements with Defendants, one governing the services offered to Defendants' Medicaid members and the other covering services provided to patients who had health benefits through commercial, Medicare, or individual plans.

On August 30, 2013, MHA filed a six-count complaint in New Jersey state court, seeking millions of dollars in alleged damages due to, among other things, Defendants' alleged improper denial and underpayment of claims. The Complaint contains purely state law claims for: violations of certain sections of the New Jersey Administrative Code; violations of the New Jersey Healthcare Information Networks and Technologies Act; fraudulent and negligent misrepresentation; equitable and promissory estoppel;

---

[1] The following is drawn from the Complaint, Notice of Removal, and briefs submitted in connection with Plaintiff's remand motion.

unjust enrichment; *quantum meruit*; and unfair claim settlement practices.[2]

On October 15, 2013, Defendants removed the case to this Court alleging the existence of federal question jurisdiction pursuant to 28 U.S.C. § 1331. Despite the Complaint containing only state law claims, Defendants contend that Plaintiff's claims are actually federal, and removal is thus appropriate, on two grounds: (1) complete preemption of the state law claims by the Employee Retirement Security and Income Act of 1974, ("ERISA"), 29 U.S.C. § 1001, *et seq*.; and (2) embedded federal question jurisdiction pursuant to the Supreme Court's decision in Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg. Co., 545 U.S. 308 (2005).

Plaintiff has now moved to remand to state court. It claims that ERISA preemption does not apply in this case because the mere reference to assignments of benefits from its patients is not sufficient, standing alone, to support ERISA standing. It also claims that there is no embedded Grable jurisdiction because its claims do not present substantial and disputed questions of federal law that require interpretation.

Defendants oppose remand, arguing that the general existence of assignments is sufficient to establish ERISA standing and preemption. They also contend that Grable jurisdiction is present because Plaintiff's state law claims implicate the payment provisions of certain federal laws, e.g., the Social Security Act, § 1923(b)(2), 42 U.S.C. § 1396u-2(b)(2).

---

[2] On November 5, 2013, Defendants filed a motion to dismiss the Complaint pursuant to Federal Rules 8, 9, and 12(b)(6), or alternatively to stay the case and compel arbitration. [CM/ECF No. 8.] District Judge Martini denied the motion without prejudice pending a decision on Plaintiff's remand motion.

3

## ANALYSIS

A. <u>**Removal Generally**</u>

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and all doubts are resolved in favor of remand. <u>See</u> <u>Samuel-Bassett v. Kia Motors Am., Inc.</u>, 357 F.3d 392, 396 (3d Cir. 2004).

B. <u>**ERISA Preemption**</u>

    1. <u>**Legal Standard**</u>

Federal courts have original jurisdiction over cases that "arise under" federal law. <u>See</u> 28 U.S.C. § 1331, 1441(a). Pursuant to the "well-pleaded complaint" rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not allege a federal claim on its face. <u>See</u> <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987); <u>Franchise Tax Bd. of Cal. v. Contr. Laborers Vacation Tr. for S. Ca.</u>, 463 U.S. 1, 10 (1983) ("[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law."). However, the doctrine of complete preemption serves as an exception to the "well-pleaded complaint" rule. <u>See, e.g.</u>, <u>Lazorko v. Pa. Hosp.</u>, 237 F.3d 242, 248 (3d Cir. 2000) ("One exception to [the

4

well-pleaded complaint rule] is for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character.").

The doctrine of complete preemption "creates removal jurisdiction even though no federal question appears on the face of the plaintiff's complaint." Id. Claims which fall within the scope of ERISA §502(a) have been deemed to be completely preempted. See Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004); Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004) ("State law causes of action that are 'within the scope of . . . §502(a) are completely preempted . . . ."); Vaimakis v. United Healthcare/Oxford, No. 07-5184, 2008 WL 3413853, at * 3 (D.N.J. Aug. 8, 2008) ("ERISA's civil enforcement provision falls within the doctrine of complete preemption."). Therefore, such claims are removable to federal court. See, e.g., Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 271 (3d Cir. 2001) ("Following the decision in Metropolitan Life, there can be no question that 'causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court.' ") (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987)).

The Third Circuit has set forth two conditions that must be met for a claim to be completely preempted under §502(a) and, therefore, subject to removal: (1) that the plaintiff could have brought the claim under §502(a); **and** (2) that "no other legal duty supports" plaintiff's claim. See Pascack, 388 F.3d at 400. Both conditions must be met in order for the claim to be completely preempted. See, e.g., N.J. Spinal Med. & Surgery, PA v. Aetna Ins. Co., No. 09-2503, 2009 WL 3379911, at *2 (D.N.J. Oct. 19, 2009);

5

Vaimakis, 2008 WL 3413853, at *3.

## 2. **No ERISA Jurisdiction Here**

Plaintiff's state law claims are only completely preempted by ERISA, and thus removable to this court, if Defendants can show that Plaintiff could have brought its claims pursuant to ERISA § 502(a). See Pascack Valley, 388 F.3d 393 at 400. The ERISA statute itself only provides standing to bring Section 502(a) claims to plan "participants" or "beneficiaries," who may "recover benefits due . . . under the plan." 29 U.S.C. § 1132(a). The parties agree that MHA is not a participant or beneficiary in this case. Nevertheless, Defendants contend that MHA still has standing to proceed pursuant to an assignment of ERISA plan benefits from a plan participant or beneficiary—i.e., from a patient.

The Third Circuit has not endorsed a "standing by assignment" theory in ERISA Section 502 cases, expressly declining to address the issue. See, e.g., Pascack Valley, 388 F.3d at 401 n. 7; Cmty Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan, 143 Fed. Appx. 433, 435 (3d Cir. 2005). Nevertheless, other courts have held that a health care provider may sue under ERISA § 502(a) if there is a valid assignment to the provider by a plan participant or beneficiary. See, e.g., Zahl v. Cigna Corp., No. 09-1527, 2010 WL 1372318, at *2 (D.N.J. Mar. 31, 2010) ("It is settled in this District that Zahl, as an assignee of these rights, stands in the shoes of his patients and may sue on their behalf to collect unpaid benefits."); JFK Med. Ctr. v. Dialysis Clinic, Inc., No. 09-4208, 2009 WL 4573741, at *3 n.2 (D.N.J. Dec. 3, 2009); Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc., No. 06-298, 2007 WL 24166428, at *4 (D.N.J. Aug. 20, 2007).

6

While no binding authority requires this Court to recognize a standing by assignment theory, the Court assumes for argument's sake that an appropriate assignment of benefits would provide standing under ERISA § 502(a).[3]

There is a strong difference of opinion in this district as to what constitutes a <u>sufficient</u> assignment of benefits. Some courts hold that the language of the assignment must clearly convey an assignment of "all benefits" under the ERISA plan, not the "mere right to payment," in order to support standing. See, e.g., Franco v. Connecticut General Life Ins., 818 F. Supp. 2d 792, 808 (D.N.J. 2011) (In order to confer ERISA standing upon a putative assignee, "the assignment must encompass the patient's legal claim to benefits under the plan."); Medwell v. Cigna Healthcare of N.J., 2013 WL 5533311, at *4 n.4 (Oct. 7, 2013) (discussing split and stating, "[t]his court is persuaded that more than the bare right to payment is necessary to confer derivative standing under ERISA."). Other courts, including this one, have held that right to recover payment is enough to confer standing. See, e.g., Edwards v. Horizon Blue Cross Blue Shield of New Jersey, 2012 U.S. Dist LEXIS, 105266 (D.N.J. June 4, 2012).

Defendants bear the burden of establishing federal jurisdiction, and therefore, that MHA is proceeding pursuant to an appropriate assignment of benefits. They attempt to do this through a declaration submitted by Michele Nielsen, a Vice President for

---

[3] At least seven Courts of Appeals have so held. See, e.g., Pascack, 388 F.3d at 401 n.7 ("Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's rights to benefits under the plan" (citing Tango Trans. Healthcare Fin. Servs., 322 F.3d 888, 891 (5th Cir. 2003) (citing various circuit courts of appeals so holding))).

UnitedHealthcare and its affiliate companies, that, among other things, references the claims submitted by MHA and its accompanying representation that it was proceeding on those claims pursuant to assignments from its patients. (See Certification of Michele Nielsen ("Nielsen Cert."); CM/ECF No. 13-1.) The declaration does not attach a specific claim form executed by a MHA patient. However, it does attach a chart that lists MHA patients and a blank copy of a MHA form labeled "General Consent/Authorization." That form, which MHA acknowledges is accurate and used in its daily business, contains the following provision:

> **ASSIGNMENT OF BENEFITS**
> I authorize payment directly to Meadowlands Hospital
> Medical Center for hospital/medical insurance benefits (from
> Medicare, Medicaid, commercial insurance, worker's
> compensation, auto insurance, etc.) that I might be entitled to
> for the charges of the care/treatment provided to me.

(Nielsen Cert., Ex. B.) The question then becomes what line of authority does this Court endorse—i.e., is assignment of right of payment alone sufficient?—and what type of assignment is contained in MHA's "General Consent/Authorization."

The parties cite numerous unpublished cases, arguing which line of authority is more persuasive. This includes cases that I have previously decided in favor of a finding of standing. However, here, we have a unique circumstance—i.e., in a recent case involving MHA, the Honorable Stanley R. Chesler, U.S.D.J., has expressly considered the same assignment language presented in this case and found it insufficient to support ERISA standing. See MHA LLC v. Aetna Health Inc., 2013 WL 705612, at *4-5 (D.N.J. Feb. 25, 2013) (quoting MHA assignment language at issue). Judge Chesler's analysis is

more searching than some of the other cases, including ones that I decided, and the Court is persuaded by it. I agree with Judge Chesler's conclusion that more than is presented in MHA's assignment is needed to establish standing for an ERISA § 502(a) claim.

As Judge Chesler explained, there are compelling reasons for requiring a more comprehensive assignment to establish ERISA jurisdiction:

> Notwithstanding the considered opinions of other courts that may be to the contrary, this Court concludes that the authorization provision in this case does not rise to the level of an assignment of rights under ERISA. According to *Black's Law Dictionary*, 'assignment' is a term of art meaning a transfer of rights or property. The Third Circuit, providing a statement of New Jersey law, held that an assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such According to the leading treatise on contract law, the elements of an effective assignment include a sufficient description of the subject matter to render it capable of identification, and delivery of the subject matter, with the intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee. A valid assignment transfers the whole of the interest in the right. Only an assignment that clearly reflects the assignor's intent to transfer his rights will be effective. Moreover, [f]or an assignment to be created [under New Jersey law], the effect must be that the assignor retains no power to revoke the assignment. In other words, as a result of a valid assignment, the assignor loses all control over the subject matter of the assignment and all interest in the right assigned. To determine the patient-assignor's intent, the Court applies an objective standard and properly looks to the language of the intake form provision as the strongest objective manifestation of intent.
>
> Plaintiff argues that it has standing to sue under ERISA because it received valid assignments of benefits from Aetna plan beneficiaries and participants. If Plaintiff were correct, that would mean the beneficiaries retained no legal rights to pursue Aetna for benefits regardless of what actions it took

9

> with regard to the claims. In theory, under such a scenario, if Aetna fully rejected a valid claim, only MHA would have the legal right to pursue Aetna, regardless of whether or not MHA balance billed the patient-insured. There is simply nothing in the language cited by Plaintiff that suggest that the parties intended such a full transfer to take place. Rather, the only reasonable interpretation is that the parties, for convenience, anticipated that the provider would be able to receive payment directly from the insurer without the beneficiary relinquishing his or her rights.

MHA, 2013 WL 705612, at *7-8 (numerous internal quotes and cites omitted).

Similarly, Judge Chesler found it "plain" that the MHA Authorization at issue in that case (and here) merely authorized an insurer to make payments directly to MHA, and thus, is a limited assignment insufficient to confer standing:

> It is plain to the Court that the quoted General Consent/Authorization language merely authorizes an insurer to make payments to MHA directly rather than through the patient as an intermediary. See Franco, 818 F. Supp. 2d at 811. As such, this authorization is precisely the kind this Court regarded as insufficient to confer ERISA standing upon a provider in Franco.

MHA, 2013 WL 705612, at *5.

District Judge Faith Hochberg recently concurred with Judge Chesler's analysis, see Medwell, 2013 WL 5533311, at *4 n.4, and so do I. This is especially so in the absence of any Third Circuit authority authorizing any assignment-based standing in ERISA cases. Thus, for the reasons above, the Court concludes that MHA's "assignment" document does not provide for ERISA § 502(a) standing in this case. Because Defendants have not established that MHA could have brought these claims as ERISA claims, their argument fails and there is no need to evaluate whether the claims

are supported by a separate legal duty.  See N.J. Spinal Med. & Surgery, PA v. Aetna Ins. Co., No. 09-2503, 2009 WL 3379911, at *2 (D.N.J. Oct. 19, 2009).

## C. Embedded *Grable* Jurisdiction

### 1. Legal Standard

The existence of federal jurisdiction is determined from the face of the "well-pleaded complaint."  Caterpillar Inc., 482 U.S. at 392.  However, in rare circumstances, the absence of an express federal claim is not necessarily fatal to federal "arising under" jurisdiction.  There is a line of precedent that sustains federal question jurisdiction over state law claims that present a substantial, embedded question of federal law.  See, e.g., Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 807-08 (1986); Smith v. Indus. Valley Title Ins. Co., 957 F.2d 90, 92-93 (3d Cir. 1992), cert. denied, 505 U.S. 1221 (1992).

The standard for establishing embedded federal question jurisdiction was discussed at length in Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005).  In Grable, the Supreme Court held that federal jurisdiction could exist over what would appear to be a state court claim raising a federal issue if the state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Id. at 314.  Grable was a quiet title action filed in state court that was removed to federal court.  The Court found that the plaintiff premised its claim on a disputed federal issue that was an "essential element" of the action—namely, whether the IRS failed to give adequate notice pursuant to federal law.

Id. at 314-15. The meaning of the federal law was the only factual or legal issue in dispute in the case and one in which the federal government had a "direct interest in the availability of a federal forum to vindicate its own administrative action . . . ." Id. at 315. Further, the Court found that no congressional approved balance of federal and state judicial responsibilities would be disturbed since it would be a rare case when a state law quiet title action raised a substantial and disputed federal issue. See id.

Grable jurisdiction has been described as "narrow and unusual." Brown v. Organon USA, Inc., No. 07-3092, 2008 WL 2625355, at *4 (D.N.J. June 27, 2008). In Empire Healthchoice Assur. v. McVeigh, 547 U.S. 677 (2006), the Supreme Court explained that Grable only applies when there is a "pure issue of law . . . that could be settled once and for all and thereafter . . . ." Id. at 700. The Supreme Court explained that Grable is meant to apply when the federal element in an otherwise state law claim "qualifies as 'substantial' and its resolution" would not only be dispositive of the case, but would be controlling in other cases. Id. Thus, in any given case, there must be more than a federal element "to open the arising under door." Id.; see also Stout v. Novartis Pharm. Corp., No. 08-856, 2009 WL 4576130, at *2 (D.N.J. Nov. 30, 2009) (finding that Grable requires a substantial dispute over the "validity, construction, or effect of federal law"). As the Supreme Court explained, it must be necessary to decide a truly substantial and dispositive question of federal law in order to "squeeze[] into the slim category Grable exemplifies." Id.

### 2.   **No *Grable* Jurisdiction**

The resolution of the embedded Grable question turns on whether Plaintiff's

claims necessarily raise a substantial question of federal law. The applicable test is "whether the federal law is a necessary element of one of the well-pleaded claims . . . ." Franchise Tax Bd., 463 U.S. at 13. Specifically, the Court has to determine whether references in Plaintiff's Complaint to federal statutes and regulations (see, e.g., Compl., ¶¶ 60-71) are actually elements of "well-pleaded" claims and whether any federal issues are substantial and necessary to decide. See, e.g., Grable & Sons, 545 U.S. at 314. While this might seem like a reasonably simple task in an ordinary case, it is not here. Unfortunately, the Complaint is not a model of clarity. In fact, Defendants describe the Complaint as a "jumble of factual allegations and long quotations from statutes and regulations" and "indecipherable" and moved to dismiss the Complaint on, among other grounds, failure to comply with the bare-boned, notice pleading requirements of Rule 8.[4] (Defs.' Mot. to Dis. Br. at 10, 21; CM/ECF No. 8.) Thus, the Undersigned has the difficult task of attempting to determine whether federal issues are raised in claims that at least appear hard to decipher. However, after careful review of the pleading, the Court is satisfied that no substantial embedded federal question has been presented.

The first Grable factor is whether the Complaint "necessarily raises a federal issue." Defendants claim that the necessary federal issue is an interpretation of the Medicaid provisions under the Social Security Act, § 1923(b)(2), 42 U.S.C. § 1396u-2(b)(2). (Defs.' Br. 32.) Initially, Defendants' reference to this statute is reasonable, as the Complaint does contain what appears to be a background-type section purporting to

---

[4] As stated in footnote 1, *supra*, the motion was administratively dismissed pending a decision on whether this Court has jurisdiction over the case.

identify the obligations of Managed Care Organizations under the Medicaid laws. (See Compl., ¶¶ 60-71.) However, the references to these federal statutes is one thing and their necessity to any of the pleaded claims is another. A background section in the Complaint referring to Medicaid laws does not, standing alone, create embedded federal question jurisdiction. See Appalachian Reg'l Healthcare v. Kentucky Spirit Health Plan, 2013 WL 191371, at *9 (E.D. Ky. Jan. 17, 2013).[5]

It is the specific claims that matter when evaluating claims of Grable jurisdiction, and Plaintiff's Complaint does not appear to raise any federal issues in the <u>actual</u> <u>claims</u> <u>that</u> <u>have</u> <u>been</u> <u>pleaded</u>. Plaintiff brings claims under state statutes and regulations and common law. Thus, references and citations to federal statutes and regulations are essentially surplus pleading and not an attempt to actually plead around or embed a federal claim. The Appalachian court explained how such surplus pleading does not transform state claims into federal ones:

> The specific counts of [the] complaint, however, only cite [Kentucky state statutes]. Additionally a number of counts of [the] complaint are premised on principles of contract law (*i.e.*, theories of unjust enrichment; allegations that Plaintiff is a third party beneficiary to Kentucky's ... MCO contract; and breach of duties of good faith and fair dealing. In short, [Plaintiff's] citation to federal statutes in the background section of their Complaint appears to be an attempt to more fully explain the organization of Kentucky's Medicaid system, as opposed to making allegations which would confer federal

---

[5] Very similar to the disjointed Complaint here, the plaintiff in Appalachian laid "out a detailed explanation of the background facts of this case, including the statutory framework—consisting of both federal and state statutes and regulations—which comprise the Medicaid system . . . . In fact, roughly fourteen pages of [the] twenty page Complaint consists of background information and facts." Id. at *8. As is discussed *infra,* that court declined Grable jurisdiction on somewhat similar facts.

14

jurisdiction over their claims.

Id. at *8.

The same is true here. Plaintiff's first and second counts are expressly pleaded under state statues and regulations. The remaining counts are all common law claims such as unjust enrichment and *quantum meruit*. As Plaintiff pleads them, the elements within the claims themselves are based on somewhat basic theory that Plaintiff provided medical services and was not paid what they believe to be a reasonable or customary amount for them. (See generally Compl., ¶¶ 116-120, 126-130.) This is not a federal issue.

Nevertheless, Defendants contend that federal issues arise because the Medicaid statute defines what is medically necessary and what the appropriate reimbursement amount may be. Even if true, this argument misses the mark when evaluating whether state laws are actually hidden federal ones. As discussed below, that is more akin to a defensive preemption argument challenging the basis for Plaintiff's claim and its proposed theory of recovery. It is not Grable. Indeed, to the extent the Medicaid statute is relevant at all, it is not substantial and disputed as required by Grable and Empire Healthchoice. Rather, it is incidental, and, if necessary could be decided by a state court. See, e.g., Premiertox, Inc. v. Kentucky Spirit Health Plan, Inc., 2012 WL 1950424, at *6-7 (W.D. Ky. May 30, 2012) (declining Grable jurisdiction on alleged embedded Medicare issues). It may well be that Defendants have a strong federal preemption related defense in this case, but that is insufficient to confer Grable jurisdiction. See, e.g., Caterpillar,

482 U.S. at 399.[6]

Even if the first Grable factor were met and a federal issue was an issue in the Complaint, Defendants' embedded jurisdiction argument would fall on the second factor—i.e., the Complaint lacks an "actual dispute" over the Medicaid statute. Defendants attempt to create a dispute between the parties over the Medicaid reimbursement statute. However, the parties' dispute is <u>not</u> over an interpretation of the Medicaid fee-for-service reimbursement rates, but rather whether those rates apply at all, or whether Plaintiff should be entitled to be paid some other "equitable" or "customary" rate. In other words, the actual dispute is not a federal one requiring interpretation of the Medicaid statute or rates, but rather whether Plaintiff is entitled to be paid some amount that it thinks is fair and just. (<u>See generally</u> Compl., ¶¶ 116-120, 126-130.) That is how the claim is pleaded. But, the viability of Plaintiff's position that it is entitled to be paid "the reasonable value of the labor performed and the market value of the materials furnished" (Compl., ¶ 126), or in accordance with Defendant's "own reimbursement standards," (Compl., ¶ 112), does not create a substantial and disputed federal issue that requires interpretation.[7]

---

[6] "[T]he presence of a federal question . . . in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—the plaintiff is the master of the complaint, and that the plaintiff may, be eschewing claims based on federal law, choose to have the cause heard in state court. . . . [A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be the master of nothing.").

[7] Defendants cite two cases to support their Grable argument: <u>Prince George's Hospital Ctr. v. Advantage Healthplan, Inc.</u>, – F. Supp. 2d –, 2013 WL 5705697 (D.D.C. Oct. 21, 2013) and <u>New York City Health & Hospitals Corp. v. Wellcare of New York</u>, 769 F. Supp. 2d 250

It is not necessary to address in detail the other formidable Grable prerequisites. Empire Healthchoice and Grable present a narrow and highly unusual avenue for jurisdiction present only when there is a dispute over the "interpretation of federal law." Stout, 2009 WL 4576130, at *2. The federal dispute must be necessary to decide, substantial, and should result in a dispositive interpretation of federal law—both in the case in which the interpretation is required and in other cases. See Empire Healthchoice, 547 U.S. at 700. There is no such dispute in this case. And, if for some reason it were necessary to incidentally refer to the Medicaid statute—e.g., to consider rates or medical necessity—it would not give rise to Grable jurisdiction. Cf. Premiertox, Inc., 2012 WL 1950424, at *7. In short, there are no substantial federal issues that are necessary to decide or that predominate over the state law issues in the Complaint. Therefore, there is no basis for Grable jurisdiction. See, e.g., Empire Healthchoice, 547 U.S. at 700-01; Singh v. Duane Morris LLP, 538 F.3d 334, 339 (5th Cir. 2008) ("finding federal

---

(S.D.N.Y. 2011). Both are non-binding and otherwise distinguishable. Wellcare involved direct and central allegations that the defendant had violated agreements with the Centers for Medicare and Medicaid services. See id. at 252, 256. Likewise, Prince George's involved defensive preemption and a motion to dismiss. See 2013 WL 5705697, at *4. The only reference to removal jurisdiction is a footnote that does not discuss the Grable prerequisites.
    Prince George's does, however, raise another complex question that is not addressed in the papers —i.e., whether there is a private cause of action under the Medicaid statute. If no private cause of action exists, there is a genuine question as to whether any federal issue that could exist is "substantial" for Grable purposes and whether embedded jurisdiction could be sustained. See, e.g., Merrill Dow Pharm. v. Thompson, 478 U.S. 804, 814 (1986) (noting that Congress' failure to provide a private cause of action for violation of a federal statute suggested that the federal right at issue was not substantial); Kalick v. Northwest Airlines Corp., 372 Fed. Appx. 317, 320-21 (3d Cir. 2010) ("[Plaintiff] cannot simply cite to a federal regulation that does not give rise to a private cause of action in order to satisfy federal subject matter jurisdiction." (citing Empire Healthchoice, 547 U.S. at 701).) Absent briefing on the issue and because it need not be decided in light of other findings herein, the Court will not comment further.

jurisdiction inappropriate where 'federal issue did not require resolution of important question of law but was predominately one of fact.'"); Bennett v. Sw. Airlines Co., 484 F.3d 907, 910 (7th Cir. 2007) ("What the Court said about Grable in Empire Healthchoice can be said here too. We have a fact specific-application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law.").

Plaintiff is the master of its Complaint and has only pleaded violations of state law. Defendants have failed to establish their heavy burden of showing that this case falls within the narrow scope of Empire Healthchoice and Grable jurisdiction. For that reason, remand is appropriate.

**D.     Some Clear Thinking On Cases Like These**

The legal analysis above stands on its own and conclusively resolves the issue in favor of remand. However, the Court is constrained to comment on the reality of the situation, which now seems to appear more frequently. Despite passing references to assignments and the gratuitous quotation from statutes tangential to the claims, this case is really a non-ERISA, non-federal contract dispute. It is a substantial case involving thousands if not tens of thousands of underlying hospital bills perhaps amounting to millions of dollars. But the core of the case is the interpretation of the two contracts between the plaintiff hospital and the defendant insurers. It is not based on any particular assignment nor any substantial federal issue. It is a state law contract claim that belongs in state court.

Furthermore, if the case really was about tens of thousands of insurance claims, it

would strain the joinder rules in a way that would need to be thoughtfully addressed. Certainly, it does not seem reasonable to saddle a federal court, in one complaint with one filing fee, with deciding whether thousands of individual claim decisions are arbitrary and capricious based on thousands of administrative records. In these times of limited judicial resources, there is something amiss with joinder of all that in one complaint. However, as already stated, those thousands of claims are not really what the case is about, at least on an individual basis. Fortunately, removal is strictly construed and any doubts result in remand. Considering the totality of the circumstances, there is no doubt here—remand is warranted.

## CONCLUSION

For the reasons set forth above, Defendants have not carried their burden to show that there is federal jurisdiction in this case. Accordingly, it is respectfully recommended that Plaintiff's motion to remand [CM/ECF No. 5] be **GRANTED**.

    /s/ Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**DATED: January 21, 2014**